Tagged Opinion



**ORDERED in the Southern District of Florida on December 14, 2007.**

_____
**Paul G. Hyman, Chief Judge
United States Bankruptcy Court**

_____

```
            UNITED STATES BANKRUPTCY COURT
             SOUTHERN DISTRICT OF FLORIDA
                WEST PALM BEACH DIVISION


In re:                              CASE NO.:06-15170-BKC-PGH

MARK LOUIS BALDWIN,                 Chapter 7

     Debtor.
_____/

MICHAEL BAKST, TRUSTEE,             ADV. NO.:07-1025-BKC-PGH-A

     Plaintiff,

v.

ELIZABETH BALDWIN,
ELIZABETH BALDWIN, as parent
and natural and legal guardian
of P.B., a minor, and
ELIZABETH BALDWIN, as parent
and natural and legal guardian
of R.U., a minor,

     Defendants.

_____/
```

**MEMORANDUM ORDER**

**THIS MATTER** came before the Court for trial on November 5, 2007 upon Plaintiff, Michael R. Bakst's, trustee in bankruptcy for Mark Louis Baldwin, *Complaint Seeking to Determine Validity, Priority, and Amount of Interest in Property, for Violation of the Automatic Stay, to Set Aside Post Petition Transfer Pursuant to 11 U.S.C. § 549, to sell Real Property Pursuant to 11 U.S.C. § 363(h) and Florida Statute § 64, and to Recover Estate Property Pursuant to 11 U.S.C. § 550.* The Court having heard the testimony of witnesses, having considered the documentary evidence, the candor and demeanor of the witnesses, and having been otherwise fully advised in the premises, hereby sets forth its findings of fact and conclusions of law.

**FINDINGS OF FACT**

On October 12, 2006, Mark Louis Baldwin (the "Debtor") filed a voluntary Chapter 7 bankruptcy petition, Case No. 06-15170-BKC-PGH. The Plaintiff, Michael R. Bakst (the "Plaintiff" or "Trustee"), is the duly appointed and qualified trustee in this Chapter 7 proceeding.

The defendant, Elizabeth Baldwin ("Ms. Baldwin"), is the ex-wife of the Debtor, having become divorced from the Debtor on August 28, 2006. The defendant, P.B., is the minor child of the Debtor and Ms. Baldwin. The defendant, R.U. (together, with P.B.,

2

the "Minor Defendants"), is the minor child of Ms. Baldwin, but at the time of trial was at least 19 years old.

On or around January 21, 2003, real property was conveyed to the Debtor and Ms. Baldwin as husband and wife. The real property is described as:

> Lot 11, Block B, COMPASS POINTE SUBDIVISION, according to the Plat thereof, recorded in Plat Book 16, Page 55 and 55A, of the public Records of Indian River County, Florida. The property contains the Parcel ID# 04-33-39-00033-0002-00011/0 and the street address of 2330 Compass Pointe Drive, Vero Beach, FL 32966

(the "Real Property").

Ms. Baldwin subsequently filed for divorce from the Debtor. Pursuant to a Final Judgment for Dissolution of Marriage dated August 28, 2006 in the Circuit Court of the Nineteenth Judicial Circuit in and for Indian River County, Florida, Case No. 2004-1273-FR-01 (the "Dissolution Judgment"), the Real Property was to be listed for sale within thirty days of the Dissolution Judgment and the proceeds from the sale were to be divided equally between the Debtor and Ms. Baldwin. The Circuit Court valued the Real Property at $300,000.00 and found that the balance due on the mortgage at that time was $139,548.00.

Pursuant to the Dissolution Judgment a "Sea of Love" sculpture and Bombay table (the "Personal Property") were to be appraised by Ronald Rennick within thirty days and Ms. Baldwin would have the option to purchase the Debtor's one-half interest within thirty days of the appraisal. If Ms. Baldwin did not timely purchase the

Debtor's one-half interest, the Personal Property was to be turned over to Ronald Rennick to be sold with the proceeds divided equally between the Debtor and Ms. Baldwin.

The Debtor filed for bankruptcy on October 12, 2006 (the "Petition Date"). The Debtor listed the Real Property on Schedule B and claimed it as exempt on Schedule C. On November 14, 2006, the Trustee filed *Trustee's Objection to Claimed Exemption* (the "Trustee's Objection"). On December 15, 2006, the Court entered an *Order Sustaining the Trustee's Objection to Claimed Homestead Exemption* (the "Order Sustaining Objection") finding that the Real Property was a non-exempt asset of the bankruptcy estate, thereby allowing the Trustee to administer it for the benefit of the estate. A copy of the Trustee's Objection was mailed to Ms. Baldwin on or about November 14, 2006 and a copy of the Order Sustaining Objection was mailed to Ms. Baldwin on or about December 15, 2006. On November 30, 2006, the Trustee recorded a certified copy of the Notice of Commencement of the bankruptcy filing with the Indian River County public records.

On December 20, 2006, after the Petition Date, Ms. Baldwin recorded a quitclaim deed, dated August 30, 2006 (the "Quitclaim Deed"), in the public records in and for Indian River County, Florida, wherein the Real Property was deeded from the Debtor to Ms. Baldwin. The purported post-petition transfer of the Real Property was not authorized by order of this Court. Also on

4

December 20, 2007, Ms. Baldwin obtained and caused to be entered an Amendment to Final Judgment for Dissolution of Marriage Agreed to by the Named Parties (the "Amended Judgment") wherein the Personal Property was gifted to the Minor Defendants.

Prior to the Petition Date, the Real Property was the subject of a foreclosure action based on an alleged default in payment on or about December 1, 2005. Ms. Baldwin asserts that the date of default was a couple months later. However, there is no dispute that the mortgage on the Real Property has not been paid since early 2006. The Court has been presented with no evidence to demonstrate Ms. Baldwin's ability to timely cure the default on the mortgage.

The Real Property is a single family home, is indivisible, and is not used in the production, transmission or distribution, for sale, of electric energy, or of natural or synthetic gas for heat, light, or power. The Real Property is currently held by the Trustee and Ms. Baldwin as tenants in common and can not be subdivided. The sale of the estate's undivided one-half interest in the Real Property would realize significantly less for the estate than the sale of the property free of Ms. Baldwin's interest. If the Real Property was sold, Ms. Baldwin would receive lump sum proceeds equal to one-half of the net sale amount in order to purchase a new home.

**CONCLUSIONS OF LAW**

The Court has jurisdiction over this matter under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (N), and (O).

***A.  The Prepetition Transfers of the Real Property and the Personal Property***

The Trustee seeks to avoid, under § 549, the transfer to Ms. Baldwin of the Debtor's one-half interest in the Real Property and the Debtor's interest in the Personal Property. Section 549 of the Bankruptcy Code provides:

> (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate --
>
> > (1)  that occurs after the commencement of the case; and
> >
> > (2)  (A)  that is authorized only under section 303(f) or 542(c) of this title; or
> >
> > > (B)  that is not authorized under this title or by the court.

11 U.S.C. § 549.

The December 15, 2006, Order Sustaining Objection determined that the Debtor's interest in the Real Property is a non-exempt asset of the estate that the Trustee should be allowed to administer for the benefit of the estate. The evidence presented at trial shows that Ms. Baldwin recorded the Quitclaim Deed post-petition on December 20, 2006. That same day Ms. Baldwin caused to be entered the Amended Judgment, whereby the Personal Property was

6

purportedly gifted to the Defendants. Each of these transfers occurred after the Petition Date and was unauthorized under the Bankruptcy Code or by order of this Court. Therefore, these unauthorized post-petition transfers were in violation of the automatic stay. All acts in violation of the automatic stay are void *ab initio*. *See New Orleans Airport Motel Assoc., Ltd. v. Lee (In re Servico)*, 144 B.R. 933, 935 (Bankr. S.D. Fla. 1992) ("by declaring void all violations of the automatic stay, the equal treatment of creditors theme of the Bankruptcy Code will be implemented"). Because the transfers of the Real Property and the Personal Property, which were both property of the estate, occurred after the Petition Date, the transfers were without effect and are hereby avoided.

The Trustee also seeks a determination that the estate holds not only a one-half interest in the Real Property but also the Debtor's interest in the Personal Property free and clear of any claim of right, title or interest of the Defendants. Section 550(a) of the Bankruptcy Code provides:

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from --
>
>   (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
>   (2) any immediate or mediate transferee of such initial transferee.

7

11 U.S.C. § 550(a).

Because Ms. Baldwin is the transferee of the Debtor's interest in the Real Property and that transfer is avoided under § 549, the trustee may recover, for the estate, the Debtor's one-half interest in the Real Property. Moreover, because the Minor Defendants are the transferees of the Debtor's interest in the Personal Property and that transfer is avoided under § 549, the Trustee may recover the Personal Property for the estate.

**B.   *Ms. Baldwin's Alleged Violation of the Automatic Stay***

As previously discussed, the post-petition transfers of the Real property and the Personal Property were in violation of the automatic stay. Section 362(k) provides that an individual injured by any willful violation of the stay shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, punitive damages. This Court has previously held that the Chapter 7 trustee is the party with standing to seek damages for violation of the automatic stay against property of the estate. *See In re Walker*, 356 B.R. 834 (Bankr. S.D. Fla. 2006)(*citing In re Lickman*, 301 B.R. 739, 855 (Bankr. M.D. Fla. 2003)). In *Walker*, this Court refrained from making a determination as to whether the trustee is an "individual" within the meaning of § 362(k), formerly § 362(h). Courts are split on the issue. However, courts that find that the trustee is not an "individual" within the meaning of § 362(k) will allow the trustee to recover

damages for stay violations pursuant to § 105(a). *See, e.g., In re Dyer*, 322 F.3d 1178 (9th Cir. 2003).

While the Trustee has standing to pursue stay violation damages in this case, the Court finds that Ms. Baldwin's violation of the automatic stay was not willful within the meaning of § 362(k). Under 362(k)(1), the Trustee bears the burden of establishing, by a preponderance of the evidence, that Ms. Baldwin knew of the automatic stay and intended the actions that constituted the violation; no specific intent is required. *See Johnson v. Smith (In re Johnson)*, 501 F.3d 1163, 1172 (10th Cir. 2007). Ms. Baldwin is pro se and is therefore not charged with actual knowledge of the effect of the automatic stay and there was no evidence introduced to show that she knew the filing of the Quitclaim Deed violated the automatic stay. Therefore, the imposition of sanctions for violation of the stay are inappropriate.

*C.   The Sale of the Real Property and Personal Property Under 11 U.S.C. § 363(h)*

The Trustee also seeks to sell the estate's interest and Ms. Baldwin's interest in the Real Property under § 363(h). Section 363(h) provides that:

> . . . the Trustee may sell the estate's interest and the interest of any co-owner in property in which the debtor had, at the time of commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if --

>    (1)   partition in kind of such property among the estate and such co-owners is impracticable;
>
>    (2)   sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
>
>    (3)   the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
>
>    (4)   such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h).

   In order for the Court to permit a sale of the Real Property under § 363(h), four conditions must be satisfied. The first condition that must be satisfied is that partition of the property between the estate and Ms. Baldwin must be impracticable. "Where property is a single family residence, there is no practicable manner of partition other than a sale and division of the proceeds." *Bakst v. Griffin (In re Griffin)*, 123 B.R. 933, 935 (Bankr. S.D. Fla. 1991). The Real Property in this case is a single-family home with no reasonable manner of partition. Therefore, the Court finds that partition of the Real Property would be impracticable.

   The second condition that must be satisfied under § 363(h) is that the sale of the estate's undivided interest in the Real Property would realize significantly less for the estate than the

sale free of Ms. Baldwin's interest. Because Ms. Baldwin's undivided one-half interest chills any prospective purchase of the estate's one-half interest, the Court finds that the estate would realize more from a sale free of Ms. Baldwin's interest.

The third condition that must be satisfied under § 363(h) is that the benefit to the estate of a sale of the Real Property free of Ms. Baldwin's interest outweighs the detriment to Ms. Baldwin. In determining whether the benefit to the estate outweighs the detriment to Ms. Baldwin, the Court considers the economic and emotional detriment that Ms. Baldwin would face. *See Griffin*, 123 B.R. at 936. Detriment includes "not only economic hardship, but also any loss, harm, injury, or prejudice proximately following from an involuntary displacement." *Id*. The state court, as part of the Dissolution Judgment, has ordered that the Real Property be marketed and sold. Ms. Baldwin is not currently making payments on the mortgage and the estate has no funds to pay the mortgage. The mortgage is currently in default and Ms. Baldwin will likely lose the home even if this Court does not allow the Trustee to sell the property free of her interest. While neither party offered any appraisal testimony at trial, the parties do not dispute that there is equity in the Real Property. Ms. Baldwin has indicated that she is attempting to obtain new financing. However, there was no evidence introduced that such efforts would likely be successful. In the event that Ms. Baldwin is unable to secure new financing and

11

the home is foreclosed upon, Ms. Baldwin will likely lose any equity that currently exists in the Real Property.

Approximately $80,448.00 in unsecured claims have been filed in the underlying bankruptcy proceeding, $71,000 of which is a claim filed by Ms. Baldwin. The remaining unsecured claims, totaling less than $10,000, were filed by a single creditor, Lawyers Title Ins. Corp. Therefore, the benefit to the estate of a sale of the Real Property would be minimal. In addition to unsecured claims, there may be unpaid administrative expenses due to the Trustee. Under the facts of this case, the Court is reluctant to order the sale of a non-debtor's homestead when the benefit to the estate and to other unsecured creditors is minimal. At the least, the Court believes that it would be equitable to afford Ms. Baldwin an opportunity pay the other unsecured and administrative claims, and to seek new financing, thereby eliminating any potential prejudice to the estate. The benefit to the estate in this case does not so outweigh the detriment to Ms. Baldwin that an immediate sale is necessary. Therefore, under the equitable powers of this Court under § 105(a), the Court will allow Ms. Baldwin 45 days from the date of this Order to pay the remaining unsecured and administrative claims and to withdraw her $71,000.00 unsecured claim filed in the underlying bankruptcy. If she does not pay the remaining unsecured and administrative claims in full by that time, the Trustee will then be permitted to market

and sell the Real Property free of Ms. Baldwin's interest.

However, even if Ms. Baldwin is unable to pay the remaining unsecured and administrative claims and the Trustee then markets and sells the Real property, section 363(i) gives Ms. Baldwin the right of first refusal to purchase the Real Property at the price at which the sale is to be consummated.  *See* 11 U.S.C. § 363(i). The Court finds that this outcome is the most equitable to all parties. Ms. Baldwin will be given an opportunity to retain her home. Allowing Ms. Baldwin an additional 45 days will also allow her time to make alternative living arrangements in the event that she is unable to obtain refinancing or to pay the remaining unsecured and administrative claims, thereby lessening the prejudicial effect that would follow from an involuntary displacement. Moreover, the Court finds that the Trustee will not be prejudiced by a 45 day delay in listing the Real Property for sale.

Finally, the Court finds that the Real Property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power. Therefore, the fourth requirement of § 363(h) has been satisfied.

**D.  *Sale of a Non-Debtor Co-Owner's Homestead is Permitted Under These Circumstances***

The final issue before the Court regarding the potential sale of Ms. Baldwin's interest in the Real Property is whether this

13

Court has the authority to allow a sale of real property under § 363(h) where the property is the non-debtor co-owner's homestead.[1] The Florida Constitution allows the forced sale of homestead property "if such partition and forced sale is necessary to protect the beneficial enjoyment of the owners in common to the extent of their interests in the property." *Tullis v. Tullis*, 360 So. 2d 375, 377 (Fla. 1978); *see also Englander v. Mills (In re Englander)*, 95 F.3d 1028 (11th Cir. 1996)(citing *Tullis* and stating that the homestead exemption should not be applied to make it an instrument of fraud or an imposition upon creditors). Furthermore, "homestead interests should be protected from forced sale wherever possible, but not at the expense of others owning interests in the property." *Id.* at 378. In this case, the Court finds that allowing the Trustee to sell the Real Property and divide the proceeds between the estate and Ms. Baldwin would protect each of their beneficial interests in the Real Property. Without the sale or a refinancing of the property, the secured lender will foreclose, the estate will realize no value from it's interest, and Ms. Baldwin will likely lose her home and any equity therein. Therefore, the Court finds that under the circumstances in this case, the sale of Ms. Baldwin's homestead interest is permitted under 11 U.S.C. § 363(h).

---

[1] In sustaining the Trustee's objection to the Debtor's claim that the Real Property was exempt as his homestead, this Court previously found that the Real Property was not the Debtor's homestead.

However, as discussed above, Ms. Baldwin will first be afforded an opportunity to pay unsecured and administrative claims.

## CONCLUSION

The Court finds that the post-petition transfers of the Real Property and the Personal Property are avoidable under § 549 and recoverable by the Trustee. However, because the amount of unsecured claims is small, the Court also finds that the benefit to the estate of the sale of the Real Property does not so outweigh the detriment to Ms. Baldwin that an immediate sale would be justified. Under the specific circumstances of this case, the Court finds that Ms. Baldwin should be afforded the opportunity to retain her home before the Trustee will be permitted to sell the Real property free of Ms. Baldwin's interest.

## ORDER

The Court having heard the testimony of witnesses, having considered the documentary evidence, the candor and demeanor of the witnesses, and having been otherwise fully advised in the premises, hereby

**ORDERS AND ADJUDGES** that:

1) The transfer of the Debtor's one-half interest in the Real Property to the Defendant, Ms. Baldwin, is avoided. The trustee is entitled to recover from Ms. Baldwin, for the estate, the transfer of the Real

    Property.

2)    The transfer of the Debtor's the Personal Property to the Minor Defendants is also avoided.  The Trustee is entitled to recover the Personal Property from the Minor Defendants, for the benefit of the estate.

3)    The Trustee's request for sanctions against Ms. Baldwin under § 362(k) for violation of the automatic stay is **DENIED.**

4)    Ms. Baldwin has 45 days from the date of this Order to pay the remaining unsecured claims and administrative expenses and to withdraw her claim for $71,000.00 in the underlying bankruptcy proceeding, *In re Baldwin*, Case No. 06-15170.

5)    Within 15 days of this Order, the Trustee shall file an application for any administrative expenses that he may have and set the application for hearing so that Ms. Baldwin will know the amount that she must pay to satisfy the unsecured claims and administrative expenses.

6)    If Ms. Baldwin fails to pay the remaining unsecured claims and administrative claims in full, and to withdraw her claim within 45 days, the Trustee is permitted to market and sell the Real Property pursuant to Florida Statute § 64. The sale will be free of Ms. Baldwin's interest in the Real Property and Ms. Baldwin shall receive one-half of the net proceeds from the sale.

7)    The Trustee shall deliver to Ms. Baldwin a copy of any contract for sale of the Real Property that he intends to accept. Ms. Baldwin will have ten days from receipt of the contract to provide written notice to the Trustee of her intent to exercise her right of first refusal under § 363(i), and evidence of her ability to perform under the contract.

8)    Within 15 days of the expiration of the initial 45-day period, the Trustee and Ms. Baldwin shall jointly select a real estate broker who will recommend a selling price and market and sell the Real Property. If the parties do not agree on a broker within that time, each party shall select a broker who will then select a third broker to be the listing broker who will then

16

        recommend a listing price.

9) The Defendants shall cooperate with the selected listing agent in selling and showing the Real Property to prospective purchasers. The Court retains jurisdiction to hear any disputes concerning implementation of this Order, including but not limited to, selecting a broker, setting the listing price, and cooperation of the parties.

10) Pursuant to Federal Rule of Bankruptcy Procedure 9021, a separate final judgment shall be entered by the Court contemporaneously herewith.

###

Copies Furnished To:

Michael R. Bakst, Trustee

Elizabeth Baldwin
2330 Compass Pointe Drive
Vero Beach, FL 32966

Elizabeth Baldwin
PO Box 6721
Vero Beach, FL 32961

AUST